UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| Sandra Landwehr, on behalf of herself and all others similarly situated, | Case No: 1:11 cv 1014 CMH/TRJ |
| Plaintiff, | CLASS ACTION COMPLAINT |
| v. | |
| AOL Inc., | JURY TRIAL DEMANDED |
| Defendant. | |

Plaintiff Sandra Landwehr, by her undersigned counsel, for herself and all others similarly situated, hereby commences this class action suit against Defendant AOL Inc. ("AOL" or "Defendant") for statutory, compensatory, punitive, equitable, injunctive, and declaratory relief. Plaintiff makes the following allegations based upon personal knowledge as to her own acts, and upon information and belief as well as upon her attorneys' investigative efforts as to AOL's actions and misconduct, and alleges as follows:

## PRELIMINARY STATEMENT

1. Plaintiff alleges that in late July of 2006 AOL purposely made public the search data of more than 650,000 AOL members and users. The released data included search queries of a highly personal nature and, while no user names were attached to the data by AOL, the queries themselves included information sufficient to identify the AOL users who had conducted the search. That AOL released this information is undisputed—AOL eventually pulled the information from its website and apologized for its disclosure. AOL's dissemination of its users' search history invaded its users' privacy and contravened AOL's express guarantee of privacy.

2. AOL's privacy breach has been widely recognized as significant. For example, *Salon* described AOL's release of the search data as "one of the biggest and most egregious

violations of user privacy" in internet history. Ari Schwartz, deputy director of the Center for Democracy and Technology, described the incident as a "major privacy concern." Condemnation was so widespread that, for example, the *Houston Chronicle* described AOL's decision as "stupid" and "boneheaded," *USA Today* described it as an "incredibly stupid decision," and CNN Money labeled it number 57 in its list of the 101 Dumbest Moments in Business; the near-immediate resignation of AOL's chief technology officer shows that even AOL agreed.

3. Indeed AOL's release of its users' search histories was the first time that a major search engine had *ever* publicly released unfiltered searches of its users. The data AOL released was capable of leading to identity theft and, without its users' permission, shared intensely personal and highly embarrassing information about identifiable individuals which in some instances led to public scorn and ridicule of users. Notably, despite the usefulness of the raw data, numerous researchers refused to use it on ethical grounds, including Cornell Computer Science Professor Jon Kleinberg, who described the data as "tainted" and wrongfully invasive.

4. On behalf of herself and all those similarly situated, Plaintiff challenges AOL's disclosure as violative of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2702, 2707 and the Virginia Consumer Protection Act, Va. Code § 59.1-200, *et seq.*

## PARTIES

5. Individual and representative Plaintiff Sandra Landwehr is a citizen of the State of Minnesota. Ms. Landwehr was at all relevant times an AOL member, and she still maintains and uses AOL services.

6. Defendant AOL Inc. is a Delaware corporation with its principal place of business located in New York, New York.

## **FACTUAL ALLEGATIONS**

7.  AOL operates a leading network of web brands and the largest internet access subscription service in the United States. The core AOL service, a subscription-based service, provides members and users with access to the internet and a wide variety of content, features, services, applications, and tools, including search tools and purported safety and security features.

8.  AOL, without informing its members or persons who used AOL services, instituted and maintained a business practice of recording and storing every internet search query made by any member or person who used its service. Thus, every time an AOL user conducts an internet search using AOL's search engine, search.aol.com, AOL makes a record of that person's search and then stores the record indefinitely. Each search query in AOL's records is uniquely correlated with the person who made it.

9.  Search.aol.com is actually powered by Google search. AOL collects the search queries from its users and transmits the information to Google to process the search queries. Searching is a basic activity performed on the internet. People with internet access use search engines to help find information on the World Wide Web. When using a search engine such as AOL's, users formulate a search query. The search engine then matches the search query with websites containing words or numbers used in the search query and provides a list of those matching websites to the user. Millions of internet users formulate and execute hundreds of millions of internet search queries every day, using search engines such as the one AOL provides to its users.

10. Searching is a highly lucrative business. Search engine companies have monetized searching by including paid advertising with users' search results. AOL provides

search-based advertising to its members and earns tens of millions of dollars each year by doing so. Search advertising is triggered when a search engine is asked to run a search query. The search engine processes the query and provides a results page with links to websites containing information relevant to the search. In addition to the results page, the search engine provides advertisements that are related to the search query.

11. On or about July 31, 2006, approximately 20 million AOL internet search records were packaged into a database and posted on AOL's website for the public to download ("Search Data" or the "Database"). The Search Data consists of search records for nearly 658,000 users of AOL search who used the search engine to conduct searches from approximately March through May of 2006.

12. By posting the Search Data on the internet, AOL made the highly personal and sensitive information of its users publicly available for anyone to see. AOL did not receive the consent of any person who used its services to release this information.

13. AOL issued an apology and removed the Search Data from its website about a week after making the Search Data available for downloading. AOL admitted that it "was a screw up, and [they] were angry and upset about it." However, by then, the Search Data had already been downloaded and reposted on the web, where it remains available for download by anyone with internet access. Though AOL acknowledged it made a mistake, it did not take any affirmative steps to seek the removal of the Search Data from the internet.

14. The Search Data holds sensitive financial information about AOL users, including names, street addresses, phone numbers, credit card numbers, social security numbers, financial account numbers, passwords, and user names.

15. The Search Data also contains sensitive personal information. For instance, the Search Data exposes an AOL member's struggles with various highly personal issues, including sexuality, mental illness, alcoholism, incest, physical abuse, domestic violence, adultery, and rape.

16. These private, highly personal issues can be associated with the actual names and identities of AOL users. The Search Data assigns each AOL user a unique identification number, which is linked to every search the user makes. The identification numbers were purportedly created to protect member privacy, but even AOL has admitted that the search queries could lead to people being identified. The Database contains personally identifiable information such as names, birthdates, phone numbers, addresses, social security numbers, and driver's license numbers. Personally identifiable information can be culled from the Database and used in a number of ways to reveal the identity of the AOL user. Once the AOL user is identified, he or she can then be cross referenced with his or her unique identification number, which allows the identified AOL user's complete search history to be segregated from the millions of other records in the Database.

17. The Search Data has become a permanent record on the internet, free to be manipulated and exposed by anyone. Websites actually have the Search Data available for download to anyone who visits the site. A number of websites host the Search Data, allowing any person who visits the site to search the Data. This has allowed websites and their visitors to identify AOL users by name and connect them with their unique identification numbers. Still others identify the AOL users, list their searches in an easily accessible format, and create a platform inviting the public to openly criticize and pass judgment based on a user's searches. AOL users have been accused of crimes, deviance, and infidelity across media platforms

including newspapers, blogs, and various websites. A Philadelphia theater company even produced and aired a play that specifically targeted one AOL user for public derision. The AOL users' private, personal, sensitive, and confidential information is available for public inquiry, ridicule, and condemnation.

18. Any AOL user who has been identified by any of these websites can have his or her search history located through the use of any search engine. With a few key strokes, anyone with internet access can review this highly personal and sensitive information.

19. One AOL user became the subject of an August 9, 2006 *New York Times* article based on her searches contained in the Search Data. Reporters were able to identify the individual by querying the Search Data. The reporters contacted the individual and asked her questions about her searches, which included "numb fingers," "60 single men," "dog that urinates on everything," "hand tremors," "dry mouth," and "nicotine effects on the body." In response, AOL apologized and stated that there was nothing it could do.

20. AOL's empty apology did not quell criticism, with *Salon* describing AOL's release of the Search Data as "one of the biggest and most egregious violations of user privacy" in internet history; Center for Democracy and Technology Deputy Director Ari Schwartz explaining that AOL's action was a "major privacy concern"; and two nonprofit groups, Electronic Frontier Foundation and World Privacy Forum, filing complaints and requests for investigation with the U.S. Federal Trade Commission.

21. AOL failed to block its own search engine from further disclosing the Search Data. A search query executed on AOL's search engine using terms contained in the Database will return results linking third party websites that post copies of the Search Data. Likewise, search queries using the names of AOL users whose identities have been revealed return search

results linking third party websites that post copies of the Search Data. AOL could have modified its search engine not to provide results linking to those websites, but it did not.

22. In disclosing the Search Data, AOL purported to impose a license on the use of the Database, including a prohibition on commercial use. However, AOL failed to enforce the terms of this license against third party websites that republished the Search Records to the detriment of AOL users. Third party websites profit from republication by displaying advertisements together with the Database.

23. AOL held itself out as one of the safest internet experiences available, claiming to be a leader and innovator in internet security and privacy for its members.

24. AOL fostered an environment of perceived safety and privacy protection through, among other things, its privacy policy, in which AOL made representations concerning safeguarding its members' and users' personal information. The privacy policy in effect at the time stated as follows:

> Your AOL Network information will not be shared with third parties unless it is necessary to fulfill a transaction you have requested, in other circumstances in which you have consented to the sharing of your AOL Network information, or except as described in this Privacy Policy. The AOL Network may use your AOL Network information to present offers to you on behalf of business partners and advertisers. These business partners and advertisers receive aggregate data about groups of AOL Network users, but do not receive information that personally identifies you.

25. Further, AOL represented, "Your privacy is central to what we do at AOL" and "our Members' privacy has always been one of our most important values."

26. AOL also listed eight "Privacy Commitments to Members," which, according to AOL, "explain how we help to protect your privacy and security." These stated, among other things: "(1) Your private communications are just that—private; (2) We do not use information

about where you personally go on the Web outside AOL; (3) We give you powerful tools to help protect yourself."

27. AOL's representations that it protects its users' privacy and safety led to praise and awards from the industry. In 2005, TRUSTe, a leading nonprofit organization promoting privacy in digital communications, and Ponemon Institute, a think tank dedicated to privacy and data protection research, named AOL as the most trusted web portal or internet service provider for privacy in its annual survey of U.S. consumers. The survey collected the opinions of more than 7,000 people about the privacy practices and history of various companies. Factors cited by more than one-third of the participants included the company's limits regarding the collection, use, and sharing of personal information; the participants' sense of security protections when providing personal information; and AOL's privacy policy.

28. Despite AOL's representations about safety and protection of personal records, its business practices do not support those claims. AOL's release of over 20 million search queries for close to 658,000 of its users is an example of just such a practice.

## JURISDICTION AND VENUE

29. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A). Plaintiff is a citizen of the State of Minnesota and Defendant is a Delaware corporation with its principal place of business located in the State of New York. The amount in controversy exceeds $5,000,000, exclusive of interest and costs.

30. This Court has original jurisdiction of the Electronic Communications Privacy Act claim, 18 U.S.C. §§ 2702 and 2707, pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367(a).

31. Venue is proper in the Eastern District of Virginia because a substantial part of the events or omissions giving rise to the claims occurred in this District and Defendant regularly does business in this District. Additionally, all parties are subject to personal jurisdiction in Virginia and Virginia law applies to this dispute pursuant to the forum-selection and choice-of-law clauses in the AOL Member Agreement. The current AOL Terms of Service, to which Plaintiff is subject, provide for exclusive jurisdiction in a "state or federal court located in Arlington County, Fairfax County, the City of Alexandria, or Loudoun County, Virginia."

## TOLLING

32. On September 22, 2006, a class action complaint was filed in the Northern District of California; it was later dismissed on the basis of the forum selection clause before the court could rule on class certification. That suit asserted the same Electronic Communications Privacy Act and unjust enrichment claims and a substantially similar state consumer law claim. During the pendency of that suit, the statute of limitations for this action was tolled.

## CLASS ACTION ALLEGATIONS

33. Plaintiff brings this action on behalf of herself and all others similarly situated, as members of a proposed Nationwide Plaintiff Class (the "Class") defined as follows:

> All persons residing in the United States or its territories whose internet search query data was made available by AOL on or about July 31, 2006. The Class does not include AOL or its affiliates, officers, directors, agents, or employees.

34. The Class is so numerous that individual joinder of all its members is impracticable. While the exact number and identification of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery of AOL, the Class is believed to have approximately 658,000 members.

35. This action is brought and may properly be maintained as a class action pursuant to the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1)-(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions. Common questions of fact and law exist as to all Class members which predominate over any questions affecting only individual Class members. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any Class member, include the following:

    a. Whether AOL violated the Electronic Communications Privacy Act, 18 U.S.C. § 2702;

    b. Whether AOL violated the Virginia Consumer Protection Act, Va. Code § 59.1-200;

    c. Whether AOL has released the Search Data or the content of other communications to third parties and the number of times AOL has released this information;

    d. Whether AOL misrepresented its privacy policy and the use of AOL user information;

    e. Whether AOL has unjustly profited from its conduct; and

    f. Whether Plaintiff and the Class are entitled to damages, civil penalties, punitive damages, restitution, and/or injunctive or declaratory relief.

36. Plaintiff's claims are typical of the claims of the Class members. Plaintiff and other Class members must prove the same facts in order to establish the same claims, described herein, which apply to all Class members.

37. Plaintiff is an adequate representative of the Class because she is a member of the Class and her interests do not conflict with the interests of the Class members she seeks to represent. Plaintiff has retained counsel competent and experienced in the prosecution of complex class actions, and together Plaintiff and counsel intend to prosecute this action vigorously for the benefit of the Class. The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

38. A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual litigation of the claims of all Class members is impracticable. Even if every Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts, in which individual litigation of thousands of cases would proceed. Individual litigation presents a potential for inconsistent or contradictory judgments, the prospect of a race for the courthouse, and an inequitable allocation of recovery among those with equally meritorious claims. Individual litigation increases the expense and delay to all parties and the court system in resolving the legal and factual issues common to all AOL users' claims relating to the Search Data. By contrast, the class action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

39. The various claims asserted in this action are additionally or alternatively certifiable under the provisions of Federal Rules of Civil Procedure 23(b)(1) and/or 23(b)(2) because:

    a. The prosecution of separate actions by hundreds of thousands of individual Class members would create a risk of inconsistent or varying

      adjudications with respect to individual Class members, thus establishing incompatible standards of conduct for AOL;

b.   The prosecution of separate actions by individual Class members would also create the risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class members who are not a party to such adjudications and would substantially impair or impede the ability of such non-party Class members to protect their interests; and

c.   AOL has acted or refused to act on grounds generally applicable to the entire Class, thereby making appropriate final declaratory and injunctive relief with respect to the Class as a whole.

## COUNT I

### Electronic Communications Privacy Act

### 18 U.S.C. §§ 2702, 2707

40.   Plaintiff incorporates the allegations in each above numbered Paragraph.

41.   The Electronic Communications Privacy Act ("ECPA") prohibits an entity providing an electronic communication service or remote computing service from knowingly divulging the contents of a communication while in electronic storage. 18 U.S.C. § 2702(a)(1)-(2).

42.   ECPA prohibits an entity providing an electronic communication service or remote computing service from knowingly divulging a record or other information pertaining to a subscriber or customer of the service to any governmental entity. 18 U.S.C. § 2702(a)(3).

43. AOL provides an electronic communication service to the public. 18 U.S.C. § 2510(15).

44. AOL provides a remote computing service to the public. 18 U.S.C. § 2711(2).

45. The search queries stored by AOL in the Search Data are contents of communications made by the users of the services offered by AOL.

46. The search queries stored by AOL in the Search Data are records or other information pertaining to AOL users.

47. By intentionally or knowingly posting the Search Data online and making it publicly available, AOL divulged the contents of Plaintiff's and Class members' communications and records or other information pertaining to them to the general public and numerous third parties, including government entities, in violation of 18 U.S.C. § 2702(a)(1), (2), and (3).

48. Plaintiff and Class members have suffered actual damages as a result of AOL's violations of 18 U.S.C. § 2702, including paying service and other fees and charges to AOL and suffering the public disclosure of their private information and the consequences thereof.

49. Pursuant to 18 U.S.C. § 2707, Plaintiff seeks on behalf of herself and the Class preliminary and permanent injunctive, declaratory, and equitable relief as may be appropriate; statutory damages, actual damages, and disgorgement of any profits made by AOL as a result of this violation, in an amount no less than $1,000 per Plaintiff and Class member; punitive damages; and reasonable attorneys' fees and litigation costs.

## COUNT II

**Virginia Consumer Protection Act**

**Va. Code § 59.1-200**

50. Plaintiff incorporates the allegations in each above numbered Paragraph.

51. "Misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits" is an unlawful trade practice. Va. Code § 59.1-200(A)(5).

52. "Misrepresenting that goods or services are of a particular standard, quality, grade, style, or model" is an unlawful trade practice. Va. Code § 59.1-200(a)(6).

53. "Advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised" is an unlawful trade practice. Va. Code. § 59.1-200(A)(8).

54. AOL violated the Virginia Consumer Protection Act and engaged in unlawful trade practices by:

    a. Representing that AOL uses secure technology, privacy protection controls, and restrictions on employee access in order to safeguard its users' personal information;

    b. Representing that AOL will keep its users fully informed about what it does with their personal information;

    c. Representing that AOL's internet service is safe, secure, and private;

    d. Representing that AOL will not share its users' network information in a manner that personally identifies them;

    e. Representing that AOL does not use information about where its users personally go on the web outside AOL, without consent;

    f. Representing that AOL 9.0's Clear My Footprints feature "can easily wipe away [users'] online footprints," including browsing history; and

      g.      Other unfair, unconscionable, deceptive, or fraudulent conduct as alleged above.

55. Plaintiff was aware of and relied on AOL's well known claimed commitment to protecting user privacy as well as AOL's express and implied promises to Plaintiff and Class members to protect its users' privacy, as set forth above, and Plaintiff was injured by AOL's misrepresentations and AOL's violation of its privacy policy and promises.

56. AOL has continued to gather personally identifiable information and could continue to do so in the future. AOL's deceptive trade practices will continue to harm Class members.

57. The Virginia Consumer Protection Act authorizes a civil action for any person injured by a violation of the Act to recover "actual damages, or $500, whichever is greater," but for willful violations, a person may recover "three times the amount of actual damages sustained, or $1,000, whichever is greater." Va. Code. § 59.1-204(A). The statute also authorizes reasonable attorneys' fees and court costs, Va. Code. § 59.1-204(B), as well as equitable relief as the court deems appropriate, Va. Code § 59.1-205.

58. On behalf of the Class, Plaintiff seeks statutory damages, treble damages, and actual damages, to the fullest extent available by law, as well as restitution, injunctive relief and other relief as this Court deems just and equitable, and litigation costs and attorneys' fees.

## COUNT III

### Unjust Enrichment

59. Plaintiff incorporates the allegations in each above numbered Paragraph.

60. AOL benefited from its unlawful acts through the receipt of payments for internet service from Plaintiff and Class members. It would be inequitable to permit AOL to retain the

benefits of those service fees, which were conferred by Plaintiff and Class members and retained by AOL.

61. AOL continues to benefit from its unlawful acts through the receipt of payments in connection with its search engine, which continues to index websites associated with the Search Data. It would be inequitable to permit AOL to retain the benefit of those monies.

62. Plaintiff seeks establishment of a constructive trust consisting of the benefit to AOL of such payments from which Plaintiff and Class members may make claims on a pro rata basis for restitution.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for judgment against Defendant as follows:

1. An Order certifying the Class and any appropriate subclasses thereof under the appropriate provisions of Federal Rule of Civil Procedure 23, and appointing Plaintiff and her counsel to represent the Class;

2. Declarations that the actions of Defendant, as set out above, are unlawful;

3. Appropriate injunctive and equitable relief;

4. Treble damages;

5. Actual damages;

6. Punitive damages;

7. Statutory damages;

8. Restitution and/or disgorgement;

9. Costs, disbursements, expenses, and attorneys' fees;

10. Pre- and post-judgment interest, to the extent allowable; and

11. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff, on behalf of herself and all others similarly situated, hereby demands a trial by jury in this case as to all issues so triable.

Dated: September 21, 2011

s/ *[signature]*

Steven J. Toll (Virginia Bar No. 15300)
Daniel A. Small
Benjamin D. Brown
Emmy L. Levens
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave NW
Suite 500 West
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
stoll@cohenmilstein.com
dsmall@cohenmilstein.com
bbrown@cohenmilstein.com
elevens@cohenmilstein.com

Daniel E. Gustafson
Daniel C. Hedlund
Michelle J. Looby
Joseph C. Bourne
GUSTAFSON GLUEK PLLC
650 Northstar East
608 Second Avenue South
Minneapolis, Minnesota 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
mlooby@gustafsongluek.com
jbourne@gustafsongluek.com

*ATTORNEYS FOR PLAINTIFF AND THE PROPOSED CLASS*