

FILED
MAY - 1 2013
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

SANDRA LANDWEHR, on behalf of )
herself and all others )
similarly situated, )
)
      Plaintiff, )
)
v. ) Civil Action No. 1:11-cv-1014
)
AOL INC., )
)
      Defendant. )

### MEMORANDUM OPINION

This matter comes before the Court on Plaintiff Sandra Landwehr's Motion for Attorneys' Fees and Expenses on behalf of herself and all others similarly situated and on Defendant AOL Inc.'s Opposition to Plaintiff's Motion.

Plaintiff's Reply Memorandum requests a revised award of attorneys' fees in the amount of $1,297,109.25, and expenses in the amount of $137,708.08 for services provided in this case. Work was performed by the law firms of Cohen Milstein Sellers & Toll PLLC, Gustafson Gluek PLLC, and Berman DeValerio. Defendant does not object to the Court awarding fees and expenses of up to $650,000, but believes Plaintiff's requested award is excessive and should be subject to substantial reduction for various reasons laid out in Defendant's Opposition.

1

Pursuant to both Federal Rule of Civil Procedure 23(h) and the Electronic Communications Privacy Act ("ECPA") 18 U.S.C. § 2707,(b)-(c) this Court may award reasonable attorneys' fees and costs in a successful class action. Under the Settlement Agreement ("Agreement"), which this Court preliminarily approved on December 21, 2012, AOL has agreed not to contest Settlement Class Counsel's right to receive fees; thus the only issue before the Court is the appropriate amount to award.

In class action cases such as this, courts generally apply one of two methods – the "lodestar method" or the "percentage of recovery method" – to ensure that the attorneys' fee sought "appropriately compensate[s] [c]lass [c]ounsel without unduly enriching them to the detriment of the [c]lass." In re The Mills Corp. Secs. Litig., 265 F.R.D. 246, 260 (E.D. Va. 2009). The Court has the discretion as to which method is most appropriate in a given case. See, e.g., In re Serzone Prods. Liab. Litig., MDL No. 1477, 2007 WL 7701901, at *1 (S.D. W. Va. May 16, 2007). When attorneys' fees are awarded under a fee-shifting statute such as the ECPA, the lodestar method is typically used. See Perdue v. Kenny A. ex rel. Winn, 130 S. Ct. 1662, 1672 (2010).

Applications for compensation are analyzed under a hybrid of the lodestar analysis and a twelve-factor test which was first expressed in Johnson v. Georgia Highway Express, Inc., 488

F.2d 714 (5th Cir. 1974) and adopted by the Fourth Circuit in Barber v. Kimbrell's, Inc., 577 F.2d 216 (4th Cir. 1978). In calculating an award of attorneys' fees, a court must first determine a lodestar figure by multiplying the number of reasonable hours expended multiplied by a reasonable rate. Grissom v. The Mills Corp., 549 F.3d 313, 320 (4th Cir. 2008). In deciding what constitutes a "reasonable" number of hours and rate, a district court's discretion should be guided by the following twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the out-set of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Robinson v. Equifax Info. Servs., 560 F.3d 235, 243-44 (4th Cir. 2009). The Court need not address all twelve factors independently because "such considerations are usually subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." Hensley, 461 U.S. at 434 n.9.

In calculating the lodestar, "determination of the hourly rate will generally be the critical inquiry in setting the

reasonable fee." Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990). In making this calculation, "the court must necessarily exclude any hours that are 'excessive, redundant, or otherwise unnecessary,' and therefore not reasonably expended on the litigation." J.R. Lilienthal, 322 F. Supp. 2d at 670 (quoting Hensley v. Eckerhart, 461 U.S. at 434). The court's discretion to award fees necessarily encompasses the ability to depart from the lodestar in appropriate circumstances. Id. In exercising this discretion the court looks to the twelve Johnson factors. Robinson, 560 F.3d at 243-44.

After determining the lodestar figure, the "court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones." Grissom, 549 F.3d at 321 (quoting Johnson v. City of Aiken, 278 F.3d 333, 337 (4th Cir. 2002)). Then the court awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff. Id.

Settlement Class Counsel spent a total of 3,210 hours prosecuting this action with the bulk of the work performed by seven attorneys. According to Plaintiff, document review was performed by one associate which eliminated inefficiency and organizational issues. In addition, work was assigned to personnel with lower billing rates when feasible. Plaintiff seeks the following fees: $781,143.00 for work performed by

Cohen Milstein, $499,153.75 for Gustafson Gluek, and $20,887.50 for Berman DeValerio.

Plaintiff submitted declarations of Mr. Brown and Mr. Hedlund in support of the rates sought. Mr. Hedlund, who is an expert in complex civil litigation practice in the Eastern District of Virginia, attests that the rates fall comfortably within the range of fees commonly awarded by the courts in cases such as this in this District. Additionally, Mr. Harvey attests that the rates fall within the rates charged in this District and that the complexity of the case merits rates at the high end of the prevailing rates for firms located in the district or higher.

Defendants point out the hourly rates for which Plaintiff seeks reimbursement are in excess of the rate structure delineated by the "Laffey Matrix." While the Laffey Matrix is not binding on this Court, courts in this District have recognized that, if anything, the reasonable rates in this District are lower than those in Washington, D.C. as contained in the Laffey Matrix. See Jackson v. Estelle Place, LLC, No. 08-cv-984(LMB/TRJ), 2009 WL 1321506, at *2-3 (E.D. Va. May 8, 2009). Plaintiff seeks a rate of $610/hr for Mr. Dominguez, an attorney with 17 years of experience, and $600/hr for Mr. Brown, an attorney with 15 years of experience. However, the rate under the Laffey Matrix for attorneys with that experience level

5

is either $435 or $445/hr, depending on the date. Plaintiff seeks hourly rates of $350 for Mr. Dubner and $335 for Mr. Bourne, both attorneys with three years of experience. The rates under the Laffey Matrix are only $240 or $245/hr, depending on the date. The rate Plaintiff is seeking for attorneys with three years of experience is greatly in excess of the rates in the Laffey Matrix; around 43% above those rates in the Laffey Matrix.

Plaintiff overstates the complexity of the case. Some reduction is needed to achieve a more reasonable rate and overall fee to bring them in line with the rates as stated in the Laffey Matrix and those sought. An across-the-board reduction of ten percent in the rates charged is appropriate and will help bring the rates closer in line with the Laffey Matrix and rates charged by attorneys with similar experience in this District in order to determine a reasonable fee award. After reducing the hourly rates for Cohen Milstein by ten percent and multiplying those new rates by the respective hours of each partner, associate and paralegal that were billed, the new total is $703,028.70. After performing the same calculations for the other firms, the new total for Berman DeValerio is $18,798.75 and $450,579.38 for Gustafson Gluek. The Gustafson Gluek number was arrived at by using the rates and hours sought in the chart provided wherein the fees requested actually totaled $498,572.50

6

(rather than the $499,153.75 as originally requested) and the rates were adjusted accordingly. With the ten percent reduction in rates, the lodestar, without reductions for any of the other Johnson factors, is $1,172,406.83.

To determine the reasonableness of the number of hours Plaintiff seeks for recovery of fees, this Court reviewed billing records as well as the declarations submitted while mindful of Plaintiff's duty to exercise billing judgment. This case, and the California Litigation which preceded it in 2006, arose out of an incident in 2006 when approximately 20,000,000 search queries conducted by people using approximately 658,000 AOL screen names over a three month period were made available for download. Doe 1 v. AOL LLC, Case No. C 06-5866 ("California Litigation"). In the California Litigation, plaintiffs alleged that it might be possible to infer the identity of certain AOL members and the contents of their searches. The allegations in the complaint were for violations of the Electronic Communications Privacy Act ("ECPA") and for unjust enrichment on behalf of the same putative nationwide class of AOL members that have been provisionally certified as the settlement class in this case. The parties spent two years engaging in extensive fact and expert discovery and motions practice. During this time, plaintiffs' lead counsel was Mr. Dominguez, who at that time was a partner at the law firm of Berman DeValerio. Mr.

Dominguez was assisted by an associate, Nathaniel Orenstein. On March 1, 2011, after four and a half years of litigation, the California District Court dismissed the California Lawsuit in its entirety for lack of subject matter jurisdiction without prejudice. The parties engaged in mediation and settled the California Lawsuit on a non-classwide basis in 2011.

However, it is apparent that Plaintiff's counsel spent hours duplicating work performed for the prior California Lawsuit. After comparing the complaint in this case and the complaint from the California Lawsuit, Plaintiff's operative complaint consists of nearly a verbatim recital of the factual allegations contained in the California complaint. Pages of additional allegations are drawn nearly verbatim from one of the expert reports in the California Lawsuit. Count I of the complaint alleges violations of the ECPA, Count II alleges violations of the Virginia Consumer Protection Act, and Count III alleges unjust enrichment and they are substantially, if not completely, identical to claims asserted in the California Lawsuit. Furthermore, Plaintiff seeks money damages (including statutory damages of $1,000 per class member pursuant to ECPA) and injunctive relief as sought in the California Lawsuit as well.

It is evident that Plaintiff's counsel in this matter familiarized themselves with the relevant technology, facts and

retention processes and the like by work performed in the California Lawsuit. The work performed prior to this matter in the California Lawsuit should have provided a strong foundation for much of the work required in this matter. The Court also finds the number of hours Plaintiff seeks is excessive because most of the discovery was already completed prior to this case. AOL agreed that all discovery from the California Lawsuit would be treated as if it had been conducted in this case. Plaintiff waited until six weeks before the discovery cut-off to serve discovery requests that were duplicative of those served in the California Lawsuit.

Expert discovery was also duplicated from the California Lawsuit. The same two experts from the California Lawsuit were again retained by Plaintiff. Notably, after comparing Dr. J. Alex Halderman's February 13, 2012 expert report for Plaintiff in this case with Dr. Halderman's expert report(s) in the California lawsuit, the opinions, facts, and paragraphs are literally verbatim or contain minor word substitutions with the exception of roughly two out of sixteen pages. At $400/hour only two pages were added to include information regarding Sandra Landwehr, Plaintiff in this case. One illustration of such verbatim repetition is paragraph 13 from Dr. Halderman's February 13, 2012 expert report for Plaintiff and paragraph 14 from his October 26, 2010 report which both state, "In order to

analyze the data efficiently, I imported the records into a MySQL database table. While importing the data, I identified an anomaly in the data originally released by AOL. I determined that, on line 2586380 of the file "user-ct-test-collection-08.txt", a binary 1 in the field "AnonID" had been incorrectly rendered as a binary 0, most likely as a result of an error in storage or transmission prior to the data being published. I corrected the error in the dataset used for my subsequent analysis in order to calculate accurate statistics."

After review of the invoices and declarations submitted by Plaintiff in light of the first <u>Johnson</u> factor, the Court agrees with the Defendant that the number of hours Plaintiff's counsel spent were unreasonable given the subject matter in this case did not dramatically differ from that of the California Lawsuit. See <u>Signature Flight Support Corp. v. Landow Aviation L.P.</u>, 730 F. Supp. 2d 513, 523 (E.D. Va. 2010). The work Plaintiff's counsel had to perform in this case was largely the same work product with changes to reflect the fact that the case is being brought in a new forum by a new Plaintiff. Such effort does not come close to justifying a nearly $1.3 million fee award. Moreover, Plaintiff fails to separate out time spent on each particular task. Therefore, this Court is unable to decipher the number of hours that should be reduced in calculating the lodestar amount because the descriptions in the billing reports

are not detailed enough to enable that level of breakdown (hours devoted to drafting the new complaint, discovery etc.). Where documentation of hours is inadequate, the district court may reduce the award accordingly. Hensley v. Eckerhart, 461 U.S. at 433. In light of this, a thirty percent reduction across the board from the lodestar amount is appropriate and will bring the fee award down to a reasonable level. Signature Flight, 730 F. Supp. 2d 513, 524.

This case involved technical facts and understanding AOL's processes for collecting and maintaining data, sophisticated analysis of damages, and some novel questions of law. However, as previously noted, counsel and experts retained in the California Lawsuit had already mastered most of these facts and issues. In addition, the core factual allegation in this case – that AOL made the search data available for download – was undisputed. While the issues and technology may have originally been difficult to grasp, Plaintiff's counsel Mr. Dominquez and Mr. Orenstein had already familiarized themselves with the issues in the California Litigation. The underlying facts and claims in both cases stemmed from the same release of search data over the same time period and alleged violations of the same laws. This factor also supports the downward departure from the requested award.

Plaintiff's counsel in this case did not need to develop new legal theories or causes of action, nor draft new discovery requests or motions to compel discovery. AOL voluntarily turned over the documents it produced in the California lawsuit. Additionally, three of the four experts retained in the California lawsuit authored expert reports in this case as well speaking to damages, economic, statistical, forensic and computer science aspects of the case. Plaintiff notes the fact that they needed to hire highly skilled lawyers to match the skills of AOL's lawyers to vigorously litigate the case, explain the technical details of the case, and to ensure the experts understood the applicable law. However, educating the experts and understanding the case was predominantly done during the California Litigation. Drafting briefs and other work product based upon previous documents does not require as much skill as Plaintiff contends. These factors also favor a decrease in the lodestar amount.

There is no evidence that Plaintiff's counsel forewent other cases or experienced any significant opportunity costs in deciding to litigate this case. The timetable of this Court is not a reason to justify a higher fee because all litigants are pushed to trial in this Court. See Signature Flight, 730 F. Supp. 2d at 25. Therefore, this factor does not weigh in favor of the fee award sought by Plaintiff's counsel here.

AOL has agreed to pay $5,000,000 to Settlement class members. At present, both the number of claims and the total value of those claims are unknown. Therefore, there is no way to ascertain whether or not the fees requested by Plaintiff's counsel are proportional to the total amount of money Defendant will eventually pay under the Settlement Agreement and the claims process. However, using the $5,000,000 number, the fee requested alone is approximately 26%. Plaintiff categorizes settlement in this case as an even more complete victory because there will not be a risk of publicly drawing attention to private information and the Class members can still obtain relief by having the data taken down from various websites. This Johnson factor does not weigh heavily in either direction of supporting or departing from the requested fee.

None of the other Johnson factors weigh in favor of the fee award sought by Plaintiff's counsel. This case had the bulk of the work performed previously in the California litigation and would therefore be attractive to many firms in this District. Mr. Dominguez and Mr. Orenstein were already intimately familiar with the issues in this case before it began in this District because of their involvement in the California Lawsuit (in which Plaintiff sought to intervene) and weighs in favor of a decreased award. See Emp'rs Council on Flixible Comp. v. Feltman, 2010 WL 186457, at *10. Plaintiff's counsel is correct

that this case was not a "sure thing" but the fact that the parties reached a settlement before class certification, summary judgment, and trial, illustrates Plaintiff's counsel actually faced far less risk of nonpayment than in a traditional class litigation taken to trial. This case was litigated for less than five months and this Court finds the requested attorneys' fee award is unreasonable. Other than the 30% reduction in the fee award, no additional reductions are deemed necessary because hours for unsuccessful claims were already subtracted by Plaintiff according to their billing judgment and the reductions already discussed are adequate for a case that never went to trial.

Plaintiff's counsel is seeking $137,708.08 in expenses for prosecuting this suit and assert they are reasonable given the travel, expert, and other litigation costs related to this case such as filing fees, copying costs, document discovery and online research. Defendant claims the expenses are excessive or unexplained and should be decreased by 50% across the board. The main issue this Court has with the requested costs are the costs for Plaintiff's experts, Dr. Halderman and Dr. Fishkind. Both experts prepared multiple reports for the California Lawsuit and repackaged most of that work in expert reports for this case as discussed above. This Court finds the remainder of the fees to be reasonable as Defendant is unable to point

specifically to deductions that should be made; they merely assert the costs were unnecessary, overstated or lack adequate detail. However, Plaintiff has provided the invoices supporting the various costs and acknowledged if this Court would like more detailed invoices they would be provided. In this Court's discretion, the costs associated with the experts will be decreased by 50%. Cohen Milstein lists $47,167.80 for "Professional Fees" (which include expert, investigator, accountant etc.) and Gustafson Gluek lists "Partial payment of Dr. Fishkind's April invoice #11045 (assessment)" as $26,000. There is no documentation that breaks out the professional fees in Cohen Milstein's expense report, therefore the total will be reduced by only 30%. The requested costs will be decreased by a total of $14,150.34 and $13,000, respectively. The costs awarded will be $110,557.74.

For all these reasons, the Court finds that a thirty percent across the board reduction from the lodestar amount (calculated with the decreased rates) is appropriate and equates to $820,684.78. An appropriate Order shall issue.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
April 1, 2013